### THE AURORA v. THE REPUBLIC.[1]

*(District Court, S. D. Georgia. July 29, 1885.)*

TOWAGE—NEGLIGENCE—PROXIMATE CAUSE.

It is unnecessary to consider the question of negligence, unless it be first made to appear that the negligence complained of was in fact the cause of the injury. If the evidence discloses no injury traceable to the negligence complained of, the libel will be dismissed.

In Admiralty.

*Denmark & Adams*, for libelant.

*Garrard & Meldrin*, for respondents.

SPEER, J. The libelant has proceeded against the tug Republic to condemn the latter for damages alleged to have been sustained by reason of the negligent conduct of the latter while towing the bark Aurora to sea from the port of Savannah, on the thirteenth of November, 1883. The negligence alleged is that the crew of the tug cast off the hawser by which they were towing the bark, while in the mouth of the Sa-

[1] Reported by Theodore M. Etting, of the Philadelphia bar.

vannah river, and in shoal water; that this was contrary to the signals of the pilot in charge of tug and tow; that, by this conduct, the bark was rendered helpless, drifted upon the shore, and was injured by thumping in the manner specified in the libel. The answer filed by the respondents denies that the hawser was cast off. They deny the signals of the pilot not to cast off, but they admit that the lashing with which the hawser was fastened gave way; that after this casualty they, at the request of the master of the bark, took another line and towed the Aurora to sea. The usual allegations of care, skill, and prudence on the one part, and gross negligence on the other, are made by both libelant and respondents, and a good deal of testimony, very conflicting in its character, is introduced to sustain the cross-allegations.

It is, however, unnecessary, in the opinion of the court, to consider this controversy, unless it has been first made to appear that the alleged negligence of the master and crew of the tug in fact was the cause of injury to the bark.

It is conceded by the testimony for the libelant that the bark showed no sign of leaking, which was the alleged manifestation of the damage caused by the thumping for many hours after the tug was cast loose, the pilot dismissed, and the bark had sailed on her course. Capt. U. Linn, the pilot in charge of the bark, a very intelligent witness for the libelant, testified that the vessel struck about 10 A. M. He remained with her until 3 P. M. During this time he was aboard the Aurora. Between 11 o'clock and flood-tide she was on her course heavily listed to starboard. (It was conceded that she left the wharf with the same list.) "She did not leak," testifies the pilot, "any time that I was on board." "The pumps were tried after the thumping, and there was no water to pump." "The pumps were not hurt, nor the rudder, nor was anything hurt to my knowledge by this thumping." Again, he says, "I did not think she was injured by the thumping." For this opinion the witness gives the reason that from the time she struck until 3 o'clock, for four or five hours, at intervals, he tried the pumps, and she had not leaked. This witness also testifies that when they crossed the bar that day it was rough sea. Salvador Serrallach was the master of the bark. He testified that the bark did not leak until the second day out. The weather for the first two days was about the same as when he left the bar. After the first two days it was variable, with heavy seas. It is more satisfactory, however, to extract from the log-book, kept on board the Aurora by this witness, an account of her experience. He describes the swell of the sea on the day he crossed the bar as "very strong." From Tuesday, 13th, to Wednesday, 14th: "We continue plying windward N. E. During the night the wind freshened and the sea became heavier." From Wednesday, 14th, to Thursday, 15th: "At the beginning of these twenty-four hours the wind changed to N. W., with heavy seas from N. E. to S. E. obliging us to shorten sail, increasing water in the pump. Kept going on

in this manner until night, and at midnight the wind northered, and was getting high, which obliged us to furl the mainsails and jib. Impossible to leave the pumps except for a few moments of rest. During the morning the wind flew around to S. E., and thus ended these twenty-four hours."

The last extract is fairly descriptive of the difficulties which environed the bark Aurora until she put into the harbor of Brunswick for succor, the weather having become very violent. The Aurora was an old ship, having been constructed in the year 1852, hence 31 years old. She had been refused rating for insurance, and it being evident that after the thumping upon which the injury is assigned that she put to sea in exceedingly rough weather, and showed no leak for nearly two days, and no evidence of any other injury traceable to the thumping having been presented, the court is of the opinion that no sufficient reason has been shown for a recovery against the respondents' tug-boat. The court, in view of all the evidence, is further of the opinion that the injury sustained was occasioned by the stormy weather and the unseaworthy condition of the bark. Ordered, that the libel be dismissed, and the decree be entered against the libelant for the costs of this proceeding.